No. 46,872

LIBERAL-NEA, An Unincorporated Association, *Appellant*, v. BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT No. 480, Seward County, Kansas, and J. L. SMALLING, *Appellees*.

(505 P. 2d 651)

Opinion filed January 20, 1973.

*Ward D. Martin*, of Crane, Martin, Claussen and Hamilton, of Topeka, argued the cause, and was on the brief for the appellant.

*Gerrit H. Wormhoudt*, of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause, and *Donald R. Newkirk* and *J. Eric Engstrom*, of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: The plaintiff Liberal-NEA is a professional organization of teachers established for the purpose of engaging in collec-

tive bargaining with the defendant, Board of Education of Unified School District No. 480, Seward County, Kansas. The plaintiff brought this action to obtain an order of mandamus requiring the defendant board to enter into professional negotiations with the plaintiff and for further relief by way of declaratory judgment construing the collective negotiations statute, K. S. A. 1970 Supp. 72-5413 *et seq.* After a full evidentiary hearing the district court denied plaintiff's request for preliminary and permanent orders of mandamus and further denied declaratory and injunctive relief on the grounds of lack of jurisdiction in the district court.

The trial court made extensive findings of fact based upon evidence which was virtually undisputed. The factual circumstances as disclosed by the evidence and as found by the trial court are essentially as follows: The 1970 Kansas legislature enacted what is now K. S. A. 72-5413 through 72-5425 (volume 5A 1972). Highly summarized this collective negotiations act authorizes professional employees of boards of education as defined therein to "form, join or assist professional employees' organizations, to participate in professional negotiation with boards of education through representatives of their own choosing for the purpose of establishing, maintaining, protecting or improving terms and conditions of professional service." The act provides a method for petitioning for recognition, holding elections, determining appropriate representative units, consummating binding collective bargaining agreements which may contain procedures for final and binding arbitration of disputes. With regard to strikes the act states; "Nothing in this act shall be construed to authorize a strike by professional employees."

The teachers in the Liberal, Kansas, school system who were employed by the defendant school district decided to avail themselves of this newly enacted statute. Pursuant to 72-5416 the plaintiff Liberal-NEA filed a request with the defendant board of education asking the board to recognize it as the exclusive representative under 72-5415. Following compliance with statutory procedures, on October 5, 1970, the board of education by resolution recognized the plaintiff as the exclusive representative of its professional employees other than the administrative employees for the purpose of professional negotiations. This recognition was made without any limitations as to time. Pursuant to such recognition the representatives of plaintiff and the defendant board joined

in negotiations during the school year 1970-71. During the 1970-71 school year the defendant board disseminated a written book on school policies for the school year 1971-72. In this book the plaintiff Liberal-NEA was recognized as representing the teachers in the Liberal schools under the professional negotiations act. The written policies of the school district are referred to in the individual teacher's contracts of the professional employees of the district. The enrollment by various teachers in the plaintiff association and salary deductions for dues were handled by the office of the superintendent of schools, J. L. Smalling. It is obvious from the record that antagonisms and disagreements arose between the officers of the plaintiff and the superintendent of schools. On November 18, 1971, Mr. Smalling as superintendent wrote the Kansas State Department of Education in Topeka a letter requesting a legal opinion as to the obligation of the Liberal board of education to negotiate with plaintiff for the 1971-72 school year. A delayed response to this request for information was made by a letter from David W. Kester, departmental attorney for the Kansas State Department of Education, which letter was dated December 1st, 1971. Mr. Kester's letter opinion will be discussed hereafter. It is clear from the record that after the plaintiff was recognized by the board on October 5, 1970, there were no applications for recognition as exclusive bargaining representative under the collective negotiations law made by the plaintiff or any other persons or organizations. The officials of Liberal-NEA obviously assumed that they would continue to act as the exclusive bargaining agent for the Liberal teachers during the school year 1971-72. In the latter part of November 1971 both the plaintiff and the defendant superintendent, J. L. Smalling, began figuring the membership of the Liberal-NEA to determine whether or not it represented a majority of the professional employees. The plaintiff association sent a questionnaire to all the members of the professional employees' unit requesting that they return such questionnaire indicating their likes or desires to be represented by Liberal-NEA for the purpose of professional negotiations. Mr. Smalling as superintendent also sent out a letter to all of the teachers advising them that Liberal-NEA did not have a majority of the district teachers as members and requested each teacher to indicate whom the teacher desired to have negotiate on his or her behalf with the board of education. The trial court made a specific finding of fact that there are 233½

professional employees in the unit and that according to superintendent Smalling's calculation the plaintiff had been selected for purposes of professional negotiations by 106 members plus 22 nonmembers or a total of 128 employees or according to plaintiff's figures 110 members plus 22 nonmembers or a total of 132 employees. Assuming either plaintiff's or defendant's figures, plaintiff represented a majority of the teachers. At all times the membership lists were readily available either in the office of the superintendent or in the NEA state office in Topeka. At the time of the trial the membership list of the plaintiff association showed that on March 9, 1972, the plaintiff had 115 members which added to the 22 nonmember NEA members who had designated Liberal-NEA as their bargaining agent made a total of 137 professional employees who had designated plaintiff as their bargaining agent.

On November 30, 1971, pursuant to 72-5423 the plaintiff delivered to the defendant board of education a letter with a list of items upon which it desired to negotiate on behalf of the professional employees for the school year 1971-72. On the same date the superintendent of the defendant board delivered to the plaintiff a written notice of the items upon which the defendant board of education desired to negotiate with plaintiff for the school year 1971-72. The trial court found that after October 5, 1970, no notice was posted by the board on the bulletin board of any school facility nor was any written notice or demand made upon the plaintiff association that the board of education had a good faith doubt that plaintiff represented a majority of the professional employees of the unit.

The event which precipitated this controversy occurred on or about December 1, 1971, when Mr. Smalling received as superintendent the letter opinion of David W. Kester, departmental attorney for the Kansas State Department of Education. This letter expressed Mr. Kester's professional opinion that the board of education was not required to recognize the Liberal-NEA as a negotiating unit or any other group that does not have a majority of its teachers as members and further that a professional organization must obtain recognition *each year* if it desires to negotiate. Prior to December 6, 1971, neither superintendent Smalling nor the board of education had questioned the exclusive representation of the teachers by the plaintiff or requested verification of membership or its majority representation. On December 6, 1971, there was no

application pending either by the plaintiff or a competing organization requesting recognition as exclusive representative of the professional employees. Likewise, no application was pending on behalf of any professional employees requesting withdrawal or termination of the recognition of the plaintiff association. Furthermore, the defendant board never requested the plaintiff to furnish it with evidence that it represented a majority of the professional employees.

A regular meeting of the defendant board was held on December 6, 1971. At that meeting superintendent Smalling suggested that plaintiff might not represent a majority of the professional employees in the unit and that the plaintiff had not made a new application for recognition as exclusive representative for the coming year. Thereupon the defendant board by resolution took action not to recognize any group for professional negotiations during the school year 1971-72, "because no group met the state legal requirements." At the same meeting the board asked the superintendent to submit recommendations for informal negotiations at the next regular meeting. It should be noted that this action of the board of education terminating negotiations and withdrawing recognition of the plaintiff was taken notwithstanding the official recognition of plaintiff by the board on October 5, 1970, the recognition of plaintiff in the school policy book for 1971-72 and the exchange of the written notices of items to be negotiated made on November 30, 1971.

On December 9, 1971, the plaintiff sent a written request to the defendant, requesting that plaintiff and defendant proceed to negotiate pursuant to the notices exchanged on November 30, 1971, and suggesting a date and place for the start of such negotiations. On or about December 15, 1971, the defendant board gave written notice to the plaintiff that it would not enter into negotiations with the plaintiff. Thereafter superintendent Smalling endeavored to organize an "informal" negotiation team to negotiate with the board as the representative of the teachers' bargaining unit. The board met again on January 10, 1972, at which time Mrs. Oleta A. Peters, president of the plaintiff association, requested the board to reconsider its action of December 6, 1971. The board refused to change its action of December 6 in which it voted not to recognize any group for professional negotiations. The board then agreed to implement the superintendent's recommendation for a committee

of teachers and administrators to prepare a list of objectives for the board's consideration concerning teacher's welfare, salaries and fringe benefits. No actual negotiations have occurred between the board and such a committee.

On January 28, 1972, the plaintiff filed this lawsuit in the district court of Seward County. At its meeting on February 2, 1972, the board received a petition signed by 25 persons including two administrators and the wife of the superintendent and the wife of the school principal. This petition criticized the plaintiff organization because of its objectives and tactics and expressed concern as to the rift developing between the faculty and the board. Another petition filed by six faculty members deplored the filing of the lawsuit against the school board and the disturbance it was causing in the teacher ranks. It should be noted that the names on these petitions amounted to less than 20% of the members of the negotiating unit.

As indicated heretofore the trial court made findings of fact which were substantially the facts set forth above. The trial court also made conclusions of law finding in substance that the board of education had a good faith doubt as to whether or not the plaintiff represented a majority of the teachers and further that the district court could not assume jurisdiction in the case because the plaintiff had failed to exhaust the administrative remedy in K. S. A. 72-5417 providing for an appeal to the State Board of Education. The trial court thereupon entered judgment in favor of the defendant. The plaintiff has brought a timely appeal to this court.

Before taking up the specific issues that are raised on this appeal we should recognize that the unionization of public employees is a recent development in Kansas. The Labor Management Relations Act of 1947 (29 U. S. C. A. § 152 [2]) specifically excluded from the ambit of its application employees of states and their political subdivisions. The Kansas statutes pertaining to collective bargaining have a history covering many years. In 1943 a comprehensive act governing collective bargaining was enacted. (K. S. A. 44-802 through 44-815.) In 1955 the state labor commissioner was authorized to adopt rules and regulations governing the conduct and canvassing of elections for the selection of collective bargaining units. (K. S. A. 44-816.) The current rules and regulations may now be found in K. A. R. 49-6-1 through 49-6-6. In *Wichita Public Schools Employees Union v. Smith*, 194 Kan. 2, 397 P. 2d 357 (1964),

this court held that the Kansas statutes pertaining to collective bargaining applied only to private industry and would not be applied to school districts and other political subdivisions of the state until such time as the legislature shows a definite intent to include such political subdivisions. In that case the employees of the board of education of the city of Wichita were denied the right to compel the state labor commissioner to conduct an election to determine a collective bargaining unit for the board of education employees. In 1970 the Kansas legislature enacted K. S. A. 72-5413 through 72-5425 which extended the right to bargain collectively to professional and administrative employees of school boards. A bill which would have given the right to public employees other than teachers passed the house but faltered in the senate. In 1971 the right to bargain collectively was extended to public employees with specified exceptions by the public employers — employees relations act, K. S. A. 1972 Supp. 75-4321 through 75-4335.

K. S. A. 72-5414 clearly and unequivocally gave to professional employees of school boards the right to form, join or assist professional employee organizations and to participate in professional negotiations with boards of education through representatives of their own choice for the purpose of establishing, maintaining, protecting and improving terms and conditions of professional services. Professional employees were also given the right to refrain from any or all of the foregoing activities. With this legislative history and the obvious purpose of the statute in mind we now turn to the issues presented on this appeal.

A decision here requires us to construe for the first time certain sections of the collective negotiations statute. Under the statutory scheme the first step in providing collective bargaining for the teachers requires the creation of an exclusive statutory representative to represent the professional employees in negotiating with the school board. Such an exclusive representative or bargaining agent is provided for in K. S. A. 72-5415. In substance this section provides that the representative designated or selected for the purpose of professional negotiations by the majority of the professional employees shall be the exclusive representative of all professional employees in the negotiating unit, except administrative employees.

K. S. A. 72-5416 provides a statutory procedure for the recognition of an exclusive representative by a local board of education. This statute provides as follows:

"72-5416. Recognition of employees' organization as representative; exceptions to required recognition. Any professional employees' organization may file a request with a board of education alleging that a majority of the professional employees in an appropriate negotiating unit wish to be represented for the purposes of professional negotiation by such organization and asking such board of education to recognize it as the exclusive representative under section 3 [72-5415] of this act. Such request shall describe the grouping of jobs or positions which constitute the unit claimed to be appropriate and shall include a demonstration of majority support through verified membership lists. Notice of such request shall immediately be posted by the board of education on a bulletin board at each school or other facility in which members of the unit claimed to be appropriate are employed. Such request for recognition shall be granted by the board of education unless:

"(a) The board of education has a good faith doubt as to the accuracy or validity of the evidence demonstrating majority support; or

"(b) another professional employees' organization files with the board of education a competing claim of majority support within ten (10) calendar days after the posting of notice of the original request and submits as evidence of its claim of majority support verified membership lists demonstrating support of at least thirty percent (30%) of the professional employees in the appropriate negotiating unit; or

"(c) there is currently in effect a lawful written agreement negotiated by the board of education and a professional employees' organization, unless the expiration date of such agreement is less than sixty (60) days after the filing of the request for recognition; or

"(d) the board of education has, within the previous thirty-six (36) months, lawfully recognized a professional employees' organization other than the petitioner as the exclusive representative of any professional employees included in the unit described in the petition."

It should be noted that the initial step in obtaining recognition is for an employee organization to file a request with the local board of education asking that it be recognized as the exclusive representative under the act. The request is required to include a statement as to the appropriate negotiating unit and a demonstration of majority support through verified membership lists. A notice of the request must be posted on a bulletin board at each school. Normally a request for recognition should be granted by the board of education unless certain conditions exist which are set forth in K. S. A. 72-5416 (a), (b), (c) and (d).

K. S. A. 72-5423 makes it a statutory duty for a board of education to enter into professional negotiations when an organization has been recognized as the exclusive representative. K. S. A. 72-5423 provides as follows:

"72-5423. Reservation of rights and duties of boards of education; duty

to recognize and negotiate; strikes not authorized; adoption of contracts by reference.

"(a) Nothing in sections 1 [72-5413] to 12 [72-5424], inclusive, of this act shall be construed to change or affect any right or duty conferred or imposed by law upon any board of education, except that boards of education are required to comply with this act in recognizing professional employees' organizations, and when such an organization is recognized, the board of education and the professional employees' organization shall enter into professional negotiations prior to issuance of the annual teachers' contracts or renewal of the same on request of either party: *Provided,* That notices to negotiate on new items or to amend an existing contract must be filed on or before December 1 in any school year by either party, such notices to be in writing and delivered to the superintendent of schools or to the representative of the bargaining unit and containing in reasonable and understandable detail the purpose of the new or amended items desired.

"(b) Nothing in this act shall be construed to authorize a strike by professional employees.

"(c) Any agreement lawfully made under the provisions of this act may be adopted by reference and made a part of the employment contract between any professional employee of the applicable negotiating unit and a board of education for a period of not to exceed two years."

There is nothing in the collective negotiations act which establishes any fixed statutory period for the duration of the status of exclusive representative; nor is there any provision as to when or under what circumstances such status should terminate. The act is also silent as to whether an exclusive representative, once having received recognition, is required to obtain recognition from a school board each year or at any other fixed interval. The absence of any specific statutory provision covering these matters has brought about the present litigation.

The issue which we must first determine is basically this: Under the collective negotiations act, K. S. A. 72-5413 through 72-5425, did the plaintiff as the recognized exclusive representative of the teachers lose its status as such by failing to file a new request for recognition for the school year 1971-72. To answer this question we must first determine the duration of a recognition of a professional organization as an exclusive bargaining representative and how such status is terminated. The school board contends that a reading of the act in its entirety requires an exclusive representative to petition annually for recognition and that if it fails to do so it loses its status and the board is not required to negotiate with it any further. The plaintiff teacher's organization contends in substance that the status of an exclusive representative, once established through the

statutory procedure, continues until the board has presented to it an application of a competing employees' organization for recognition or an application by employees in the negotiating unit to terminate such recognition and status. From a careful analysis of the collective negotiations act when considered along with the general law which governs labor relations, we have concluded that the status of a teacher's organization as the exclusive bargaining representative continues in the absence of the recognition of a new exclusive representative or the termination of its status by some legal means. The general rule is that the employees' designation of their bargaining representative does not grant a permanent status but that such status continues until it is terminated in some legally effective manner. (56 C. J. S., Master and Servant, § 28 [36].) Stated in another way the status of a labor union, properly selected as the exclusive bargaining agent for employees, is presumed to continue on their behalf until it is terminated in some legally effective manner. (*Wis. E. R. Board v. International Asso., etc.,* 241 Wis. 286, 6 N. W. 2d 339.) This rule is followed under the National Labor Relations Act and the many state acts patterned after the federal act. Many cases on this subject are set forth in the annotation in 144 A. L. R. 444 and in the more recent annotation to be found in 42 A. L. R. 2d 1415. It is important to note that under the National Labor Relations Act and similar state statutes, a fixed term is not usually provided for the duration of a status as exclusive bargaining agent and that the matter of termination of status as an exclusive representative is usually left to administrative proceedings provided by statute. For example, under the present Kansas statutes pertaining to collective bargaining (K. S. A. 44-803 through 44-817), the selection of a collective bargaining unit and its representative and the termination of the status of an exclusive representative are left to rules and regulations adopted by the state labor commissioner and administrative proceedings thereunder. Likewise the public employer—employee relations act (K. S. A. 1972 Supp. 75-4321 *et seq.*) adopted in 1971 does not prescribe any fixed time within which the status of an exclusive representative shall continue. Controversies involving questions of representation are left to the public employee relations board which is given authority to promulgate rules and regulations to establish a procedure for certification of an exclusive representative. (K. S. A. 1972 Supp. 75-4327.) We are convinced that the collective negotiations act, K. S. A. 72-5413

*et seq.*, when read in its entirety contemplates the continuing status of an exclusive bargaining representative until terminated by legal means and does not require a yearly request by such an organization for recognition. We believe that the adoption of such a construction would have the effect of promoting stability and tranquility in the relationships between school boards and their professional employees.

K. S. A. 72-5416 (*d*) authorizes a board of education to deny recognition to a professional organization if within the previous 36 months the board has lawfully recognized a professional employees' organization other than the petitioner as the exclusive representative of any professional employees included in the unit described in the petition. This section of necessity disposes of the argument that a recognition terminates automatically at the expiration of 12 months after it is granted.

We note also section 72-5416 (*b*) which requires a competing professional organization to demonstrate support of at least 30% of the professional employees before a request for recognition will be denied. A reasonable interpretation of this section is that recognition once granted shall be continued unless at least 30% of the professional employees oppose the established exclusive representative. Furthermore a continuance of exclusive representative status beyond a period of one year is inferred by K. S. A. 72-5423 which provides that notices to negotiate on new items or to amend an existing contract must be filed on or before December 1 in *any* school year by either *party*. If an organization were required to petition for a status as exclusive representative each and every year then this provision in 72-5423 would seem to be meaningless. For these reasons we interpret K. S. A. 72-5413 *et seq.* to mean that recognition and the status of an exclusive bargaining representative continue until a new request is filed with a board of education by its employees seeking either recognition of another exclusive representative or nonrecognition of the formerly recognized representative. We further hold that the act does not contemplate a unilateral withdrawal of recognition of an exclusive representative by a school board in the absence of a request from its employees filed with the board pursuant to K. S. A. 72-5416. To hold otherwise would defeat the purpose of the act to give to the professional employees of school districts the right to bargain collectively free from interference by the school board.

The act provides a remedy to terminate the status of an exclusive representative where it has lost majority support. K. S. A. 72-5414 not only affords professional employees the right to collective bargaining but also provides that professional employees have the right to refrain from such activities. The right of employees not to bargain collectively is further recognized in K. S. A. 72-5416 which provides that where a request for recognition is made the board of education should not grant recognition to the proposed bargaining representative where the board of education has a good faith doubt as to the accuracy or validity of the evidence demonstrating majority support. The act anticipates that disputes will arise between professional employees' organizations and also between a professional organization and employees who do not desire to be represented by it. In such situations a remedy is provided by K. S. A. 72-5417 which states as follows:

"72-5417. Nonrecognition disputes to be determined by state board of education on application therefor. A petition may be filed with the state board of education, in accordance with such rules and regulations as it may prescribe for such filings, asking it to investigate and decide the question of whether professional employees of an appropriate negotiating unit have selected or designated an exclusive representative under section 3 [72-5415] of this act, by:

"(a) A board of education alleging that it has received a request for exclusive recognition from a professional employees' organization and has a good faith doubt as to the accuracy or validity of the claims made in such request; or

"(b) by a professional employees' organization alleging that it has filed a request for recognition as exclusive representative with a board of education and that such request has been denied."

The function of the State Board of Education under this statute is essentially to investigate and decide the question of whether professional employees of an appropriate unit have selected or designated an appropriate representative under K. S. A. 72-5415. The jurisdiction of the State Board of Education in these matters may be invoked by the local board of education by a petition alleging it has received a request for exclusive recognition from a professional employees' organization and has a good faith doubt as to the accuracy and validity of the claims made in such request. The jurisdiction of the State Board of Education may also be invoked by a petition filed by a professional employees organization alleging it has filed a request for recognition as exclusive representative with a board of education and that such request has been denied.

In both instances the statute contemplates a dispute between professional employees as to whether or not a particular professional organization should be recognized as the exclusive bargaining representative. This construction is supported by K. S. A. 72-5418 which provides that the State Board of Education shall dismiss without determination any petition if the petition is not supported by credible evidence that at least 30% of the professional employees in the unit are members of the organization seeking recognition or the board of education has, within the previous 12 months, lawfully recognized a professional employees' organization other than the petitioner as the exclusive representative of any professional employees included in the unit. This statute protects the status of a recognized exclusive representative from professional employees in the unit who are opposed to the organization unless a showing is made that they represent at least 30% of the employees in the unit. This statute also affords to a recognized exclusive representative a period of 12 months after recognition in which it can not be challenged at all by another professional organization.

Turning to the situation of the defendant board of education in the case at bar we have concluded that under the statutes the board had no right to withdraw recognition of the plaintiff organization or to refuse to negotiated with it because of a claimed loss of majority representation in the absence of an application from another group of employees to terminate the authority of the plaintiff as the previously recognized exclusive bargaining representative. In other words the board could safely negotiate with the plaintiff as exclusive bargaining agent until at least 30% of the professional employees filed with it a request for the representation of another professional organization or a request that the status of plaintiff as exclusive representative be terminated. Upon the receipt of such a request the board of education could then file a petition with the State Board of Education under K. S. A. 72-5417. The State Board of Education could conduct an inquiry or investigation or hold hearings or hold an election to determine whether or not the plaintiff organization represents a majority of the professional employees in the unit. Under this construction if the employees are dissatisfied with their chosen union they may submit their own grievance to the local board of education and then to the State Board of Education. If the local board of education has a good faith doubt about its duty to continue bargaining,

its responsibility is to petition the State Board of Education for relief. It has a duty to continue to bargain and negotiate with the previously recognized exclusive representative until the State Board of Education has determined the controversy. The underlying purpose of the statute is to encourage good relationships between a board of education and its professional employees. To allow boards of education to rely on the rights of their employees in refusing to bargain with a formally recognized union is not conducive to that end; it is inimical to it. (*Brooks v. Labor Board,* 348 U. S. 96, 99 L. Ed. 125, 75 S. Ct. 176, 42 A. L. R. 2d 1405.)

The defendant board of education contends and the trial court found as a matter of law that the plaintiff organization had an administrative remedy available by filing a petition with the State Board of Education as provided in K. S. A. 72-5417 and that such remedy had to be exhausted before the district court could assume jurisdiction. We do not agree. The Liberal-NEA was formally recognized through the statutory procedure in October of 1970. During the school year 1971 the defendant board of education recognized plaintiff as the exclusive representative in its school board policy publication for the school year 1971-72. Furthermore on November 30, 1971, the defendant board of education through its superintendent Mr. Smalling delivered to the plaintiff its written notice as to new items to be negotiated pursuant to K. S. A. 72-5423 and further recognized the Liberal-NEA as the negotiating unit. The status of plaintiff as the statutory exclusive representative continues in effect until terminated by law through the procedure discussed heretofore. The plaintiff had no duty to petition for a status it already had. The plaintiff as statutory exclusive representative was entitled to be recognized and the defendant board of education had a statutory duty to enter into professional negotiations with it under K. S. A. 72-5423.

In view of the conclusion which we have reached in this case that the defendant board of education had a statutory duty to enter into negotiations with the plaintiff Liberal-NEA, it follows that a writ of mandamus should have been granted by the trial court. (K. S. A. 60-801; *Woelk v. Consolidated School District,* 133 Kan. 346, 299 Pac. 648.) As part of its prayer for relief the plaintiff seeks to recover damages and attorney fees sustained by reason of the refusal of the defendant board of education to negotiate with the plaintiff. We have concluded that damages and attorney fees

should be denied under the circumstances shown in this case. We have held that the underlying test to determine whether or not damages and attorney fees should be allowed in a mandamus action is whether the refusal of the public official, commission or board to perform the duty imposed by law was reasonable under all the facts and circumstances. (*Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 438 P. 2d 732.)

In view of the novelty of the legal questions and the fact that the defendant board of education relied upon the legal opinion of David W. Kester, departmental attorney for the State Board of Education, we cannot find that the board of education acted unreasonably in refusing to negotiate with the plaintiff. We find on the other hand that there was a reasonable doubt on the part of the members of the board of education relating to the questions involved. Hence the request for the allowance of damages and attorney fees must be denied.

Comment should be made in regard to the failure of the State Board of Education to prescribe rules and regulations to govern the administrative procedure in the determination of nonrecognition disputes as provided under K. S. A. 72-5417. One of the difficulties faced by the parties in this case was the fact that such rules and regulations have not been adopted by the State Board of Education. We hope that such rules and regulations will be adopted in the near future so that a prompt administrative remedy will be available in situations similar to the one we have before us.

The judgment of the trial court is reversed and the case is remanded to the district court with directions to issue an order of mandamus requiring the defendant board of education to engage in collective negotiations with the plaintiff in accordance with the views expressed in this opinion.