### No. 47,715

The Seaman District Teachers' Association of Shawnee County, Kansas, *Appellant* and *Cross-Appellee, v.* The Board of Education of Seaman Unified School District No. 345, *Appellee* and *Cross-Appellant.*

(535 P. 2d 889)

234

*Ward D. Martin,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, argued the cause and was on the brief for the appellant and cross-appellee.

*William E. Enright,* of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *George A. Scott,* of the same firm was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

SCHROEDER, J.: This action is brought by The Seaman School District Teachers' Association of Shawnee County, Kansas, (plaintiff-appellant) to obtain an order of mandamus and injunction enjoining and restraining The Board of Education of Seaman Unified School District No. 345 (defendant-appellee) from unilaterally issuing individual contracts of employment to certified employees of the defendant and to require the defendant to return to the negotiating table and for damages, attorneys' fees and costs pursuant to K. S. A. 72-5413, *et seq.*

During the school year 1972-1973, the plaintiff was the exclusive representative of the professional employees, less administrators, of the defendant pursuant to K. S. A. 72-5416. On December 1, 1972, the plaintiff and defendant gave notice to each other of their desire to negotiate an agreement on certain items for the 1973-1974 school year.

In the month of December 1972 the parties had three meetings for the purpose of reaching a procedural agreement. Unable to agree, they proceeded to negotiate on substantive proposals. Thereafter, the parties met together for the purpose of negotiations eleven different times during the months of January, February, March and April of 1973. Three other meetings were scheduled on March 26, March 30 and April 2; however, the plaintiff's negotiating team failed to appear for those sessions. During the meeting of March 8, 1973, the plaintiff's negotiating team invited approximately 35 to 40 members of their association to observe the negotiations. This led to a breakdown of negotiations at that meeting because the defendant's representatives did not feel they could negotiate with that many people present.

During the negotiating meeting of February 19, 1973, the defendant stated in writing that it would receive input and discussion but would not formally negotiate on the following items requested

by the plaintiff in its notice: Class size; teachers' aides; public board meetings; planning period for elementary teachers; inclusion of agreed terms in contract by reference; teachers' evaluation of administrators; and maintenance of standards.

Items upon which the parties negotiated were: Contribution to Blue Cross-Blue Shield; personal leave; grievance procedures; teachers' salaries; sick leave; and reimbursement for college credit. The plaintiffs in their petition charge that the defendant and the defendant's representatives wholly failed and refused to enter into professional negotiations on the above items in a good faith effort to reach agreement with respect to the terms and conditions of professional service.

On the night of April 13, 1973, the defendant's negotiating team recommended to the Board of Education that negotiations stop and contracts be issued. Accordingly, the Board voted to unilaterally issue contracts to the teachers for the next year. This decision was based on the fact that, under the law, by April 15 teachers were to notify the district if they did not wish to teach during the following year. The Board thought it would be difficult for teachers to make such a decision if they did not have a contract by that date. The Board also requested advice from its attorney relative to termination of negotiations and was referred to the decision of Judge Walton in *National Education Association v. Board of Education*, 212 Kan. 741, 512 P. 2d 426. (At that time the case had not been decided by the Supreme Court.) The trial court held that it was reasonable to negotiate until April 15, but unreasonable to negotiate past that date. The defendant also based its decision on the administrative needs of the district.

During the 1972 session of the legislature, a proposed amendment was made to the School Foundation Act (Senate Bill 92) which, eventually as amended, passed both houses of the legislature as Substitute Senate Bill 92. A computer run off on the financial aspects of Substitute Senate Bill 92 was received by the defendant on April 11, 1973, and a representative of the defendant attended a seminar concerning the matter. However, the financial information was not available to the defendant until April 13, 1973. On that date the defendant's representative advised the Board that he believed, under the provisions of Substitute Senate Bill 92 and cutting the budget for new equipment, it would be possible to give the professional employees of the plaintiff a $400 across-the-board

236

salary raise. This was based upon information available through the representative of the Board at the time the decision was made. The $400 salary raise had not been presented by the defendant's representatives in prior negotiations.

On April 16, 1973, approximately 83 professional employees of the defendant and members of the plaintiff association struck and picketed defendant by failing to attend and instruct their assigned class duties.

On April 19, 1973, the plaintiff filed its action in the District Court of Shawnee County, Kansas. Hearings were held on April 26, 27 and 30, and in its memorandum opinion filed May 2, 1973, the trial court stated and found:

"Kansas Statutes Annotated 72-5413 (g) defines 'professional negotiation' as 'meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service.'

" 'Good faith effort' as used in the foregoing statute means an effort actuated by honest intention. It follows, therefore, that said statute imposes a duty on parties engaged in professional negotiations to confer and discuss the terms and conditions of professional service with an honest intention of reaching agreement. A party does not bargain in good faith if it adopts an adamant or unyielding position on an issue which would fall within that category of issues reasonably subject to negotiation under the statute. Any intention on the part of one party to totally dominate the other party engaged in negotiations or to impose substantially all of its own terms on the other party without a fair consideration of such other party's terms is inconsistent with the good faith requirement. Similarly, a party which refuses to negotiate at all or which engages in conduct calculated to obstruct negotiations, fails to satisfy the statutory duty to engage in professional negotiations prior to the issuance of contracts. Finally, a party which assumes a position characterized by excessive demands, unreasonable proposals or terms clearly beyond the capability of the other negotiating party is also acting in violation of the letter and the spirit of the act.

"In the instant case, the board failed to fully satisfy the requirement of professional negotiations with the association in the following respects:

"1. At the outset of negotiations the board rejected the 'discrimination clause' as contained in the procedural agreement proposal of the association. As a consequence of said rejection, the board refused to agree that members of the association team would not suffer discriminatory acts by the board by reason of the professional negotiations of the parties.

"2. The board adopted an adamant and unyielding position in refusing to negotiate and to fairly consider the 'maintenance of standards' proposal of the association. The board treated this proposal as non-negotiable notwithstanding the fact that the 1972-1973 Negotiated Agreement contained such a provision.

"3. The board refused to negotiate the association's proposal whereby individual teacher contract would incorporate by reference the terms of any

negotiated agreement between the board and the association although K. S. A. 72-5423 ( c ) specifically authorizes such incorporation.

"4. The board refused to fairly and fully consider the grievance procedure proposal of the association notwithstanding the fact that the Kansas Legislature specifically authorized agreements for binding arbitration as provided by K. S. A. 72-5424.

"5. The board unilaterally terminated negotiations on April 12, 1973, and at a board meeting on the following night voted to authorize a salary increase across the board to all teachers in the amount of $400.00 without first conferring with the association and when such matter was the subject of professional negotiations prior to such unilateral termination. Thereafter, the board issued unilateral contracts on or about April 13, 1973, containing an express term that said contract offer must be accepted by all teachers no later than April 25, 1973. The aforesaid unilateral acts on the part of the board constitute a most serious violation of its duty to engage in professional negotiations with the association.

"The Court is also of the view that the association failed to comply with the letter and the spirit of the aforesaid statute requiring it to engage in professional negotiations. The association's proposals concerning teacher aides, teacher salaries, planning period, and unlimited sick leave taken together under all the facts and circumstances appear to constitute excessive demands beyond the financial capabilities of the board. The Court is mindful of the stringent financial limitations imposed upon the board by law. Additional monies would be required in order for the board to implement all of said proposals. It is unreasonable for the association to insist that the board agree to a combination of proposals which require financial resources over and above those available to the board. Likewise, the positions taken by the association concerning class size and personal leave are of questionable reasonableness under all the facts and circumstances of the instant case.

"It is also the opinion of the Court that the association failed to properly discharge its duty to engage in professional negotiations when it failed to agree to three additional negotiation meetings and contributed to the breakdown of negotiations at the March 5, 1973, meeting by inviting an excessive number of observers."

Thereupon the court issued *a preliminary order of mandamus requiring the plaintiff and defendant to resume forthwith professional negotiations* in accordance with the provisions of K. S. A. 72-5413, *et seq.*, requiring the parties to negotiate at such times, with such frequency and under such conditions as to evidence a good faith effort to reach agreement. The trial court further temporarily enjoined the defendant from the issuance of unilateral teacher contracts for the school year 1973-1974 from and after the 23rd day of April 1973, until the further order of the court.

On May 10, 1973, the defendant filed its answer to the plaintiff's petition and alleged, among other things, that the plaintiff was not

a proper party to institute suit against this defendant based upon the facts alleged in its petition.

*On May 14, 1973, the negotiating representative of the plaintiff and defendant reached agreement on the 1973-1974 contract.* They agreed upon the salary and terms of employment for the school year 1973-1974, and for the return of the terminated teachers who had been involved in the work stoppage. The terms of the employment agreement for the 1973-1974 school year, which were accepted by the teachers on May 14, 1973, were substantially the same as those contained in the unilateral contract of the defendant Board on April 13, 1973, except that it was agreed that all teachers would receive no less than a $400 increase in salary for the 1973-1974 school year, and committees would be established to recommend a modified salary index and to study the use of the transportation appeal money if it was granted. The agreement for the return of the teachers was ratified *by the terminated teachers* but not by the plaintiff association. *The employment agreement for 1973-1974 was ratified by the members of the plaintiff association on May 15, 1973. The defendant Board of Education met on May 17, 1973, and ratified the employment agreement for the 1973-1974 school year* by a vote of five to one, but *rejected* the agreement for the return of the terminated teachers by a vote of five to one.

On May 22, 1973, the plaintiff filed its first amended petition which contained five counts. Count I requested the court to issue an order of mandamus and injunction forthwith restraining the defendant from issuing individual contracts and requiring the defendant to return to the negotiating table; Count II requested the court to enter an order requiring the Board to allow striking teachers to return to work pursuant to an alleged agreement which plaintiff maintained was part of the negotiated agreement; Count III requested the court for an order compelling the defendant to reinstate terminated employees under the same terms and conditions as reflected in the negotiated agreement for the 1973-1974 school year and back wages for the striking teachers; Count IV requested the court to issue an order compelling defendant to reinstate the terminated teachers for the remainder of the 1972-1973 school year and for an order compelling the defendant to offer said persons a contract on the same terms and conditions as the negotiated agreement for the 1973-1974 school year; and for back pay; Count V requested the court to order the defendant to negotiate the return

of the striking teachers to their classroom duties for 1972-1973 and to negotiate their employment for the 1973-1974 school year.

On May 31, 1973, the defendant moved for summary judgment against the plaintiff for the reason that plaintiff lacked all capacity to sue the defendant; that if plaintiff had the capacity to sue, then its capacity was strictly limited to those causes of action which might arise pursuant to the Collective Negotiations Act; that the 1973-1974 negotiated agreement had been ratified according to law; and that the alleged agreement for the return of teachers was not an issue for collective negotiations pursuant to the Collective Negotiations Act; and that the individual members of the plaintiff association had failed to exhaust their nonjudicial remedies.

On June 14, 1973, the court ruled on the defendant's motion and rendered summary judgment in favor of the defendant on the second, third and fifth counts of the plaintiff's amended petition. The plaintiff had previously requested permission to withdraw its fourth cause of action and the court granted permission for the withdrawal.

The trial court in its memorandum decision of June 14, 1973, held the agreement for the return of the suspended or terminated teachers was not an issue for collective negotiations as provided by the Collective Negotiations Act. It was the further view of the trial court that the plaintiff association had no legal standing to assert claims for reinstatement on behalf of the suspended or terminated teachers.

On July 5, 1973, the trial court filed its memorandum decision with respect to the plaintiff's motion to alter and amend (dated June 15, 1973) and found the only remaining issue in the case was whether the plaintiff was entitled to damages and attorneys' fees.

The plaintiff in its motion to alter and amend the order and judgment of the trial court stated as one of its grounds for the motion that the negotiations, agreements and settlements of the grievances and disputes concerning the contracts of the terminated teachers was incidental to and an integral part of the negotiations, settlement and agreement concerning the terms and conditions of professional service of the employees of the defendant school district for the year 1973-1974. In its memorandum decision on July 5, 1973, the trial court said:

"Please be advised that the Court after due consideration is of the view that the only remaining issue in the above-entitled case is whether plaintiff is entitled to damages and attorneys fees.

"The Court is of the further view that it cannot properly consider as an issue in the instant case any contention on the part of plaintiff that the ratification of the negotiated agreement concerning teacher's contracts for the 1973-74 school year should be set aside.

"The Court adopts this position for three reasons. First, plaintiff association has not voted to rescind its ratification, and any action on the part of this Court in this regard would be premature. Second, prior to final negotiations culminating in the agreements in question and the ratification by plaintiff, this Court announced its tentative view that the return of the striking teachers was not an issue for collective negotiations as provided by the collective negotiations act (K. S. A. 1972 Supp. 72-5413, et seq.). Thus, any ruling by the Court should have come as no surprise to the parties. Third, parol evidence of prior oral or written negotiations or agreements of the parties or of their contemporaneous oral agreements, which varies or contradicts the written contracts in question would not be admissible under the parol evidence rule.

"I might also note in passing that the conduct of plaintiffs in submitting only the negotiated agreement concerning teachers contracts for the 1973-74 school year and not the agreement for the return of the striking teachers, for vote by its entire membership appears to be consistent with the Court's position. It is difficult to understand why both agreements were not submitted for vote to the entire membership if one was dependent upon the other. Furthermore, the record reflects that during the course of the final hearing when tentative agreements were reached, defendant clearly took the position in the presence of the Court that the two agreements were entirely separate.

"The Court is also of the view that a permanent order of mandamus should not be granted at this time. To warrant its issuance it must appear that the writ will be effectual as a practical benefit to the petitioner and serve a proper purpose (52 Am. Jur. 2d, Mandamus, sec. 36 at pp. 360-1.) The writ will not be granted in a doubtful case (52 Am. Jur. 2d Mandamus, sec. 35 at p. 360.) It must also appear that some just purpose may be served by the writ, and the Court in the exercise of its discretion, may refuse to grant the writ if the consequences of its issuance will not promote substantial justice, will result in more harm than good, will lend aid to the effectuation of a palpable injustice, will tend to disorder and confusion, or will be attended with manifest hardship and difficulties. (52 Am. Jur. 2d, Mandamus, sec. 33 at pp. 358-9)

"In the instant case, the defendant complied with the preliminary order of mandamus to return to professional negotiations. An agreement was reached and ratified by both parties. No useful purpose would be served by a permanent order of mandamus compelling defendant to professionally negotiate with plaintiff for the indefinite future under these circumstances. Such an order is not necessary to promote substantial justice at this time. Moreover, such an order would require virtually continual and perpetual supervision by this Court over the professional negotiations of the parties. This Court is ill-equipped for such an endeavor, and any attempt on its part to fulfill such a role might constitute an unwarranted interference in the

affairs of defendant school board. Plaintiff can always seek redress in the Courts at any time in the future when an actual case or controversy arises in this regard."

On October 24, 1973, and after this Court's decision in the *National Education Association v. Board of Education,* supra, (filed July 14, 1973) the trial court amended its ruling of July 5, 1973, by allowing the issue of permanent mandamus to be further considered by the court.

On January 15, 1974, the defendant again filed a motion for summary judgment on the ground that the issues remaining before the court were moot.

The trial court in ruling upon the defendant's motion for summary judgment stated the basis of the motion was that the State Board of Education, by hearing on January 2, 1974, ordered the defendant to recognize the Seaman Professional Education Association of Kansas as the exclusive representative of professional employees and administrators for the purpose of professional negotiations with the defendant. Counsel for the plaintiff conceded the above action had in fact been taken by the State Board of Education. Counsel for the plaintiff did not object to receiving the documents attached to the defendant's motion for summary judgment as a part of the record herein but contended that such actions on the part of the State Board provided no basis to deny relief in the nature of a permanent order of mandamus.

Treating the defendant's motion for summary judgment as a motion for involuntary dismissal under K. S. A. 60-241, the trial court in its memorandum decision filed March 29, 1974, said:

"The remaining issues before the Court are: (1) whether a permanent order of mandamus should issue requiring the defendant to engage in professional negotiations with plaintiff; (2) whether defendant should be ordered to pay plaintiff's attorney's fees.

"The general and the well-established rule is that mandamus is an extraordinary remedy, discretionary in character, and does not issue as a matter of right. (*Bradley v. Cleaver,* 150 Kan. 699, 703; *Miller v. Jackson,* 166 Kan. 141, 144; *State, ex rel. Fatzer v. Salome,* syl. 1, 169 Kan. 585; *Felten Truck Line v. State Board of Tax Appeals,* 183 Kan. 287, 292; *State, ex rel. Frizzell v. Paulson,* syl. 2, 204 Kan. 857.

"Moreover, the writ of mandamus does not issue automatically, but its usefulness must be shown. To warrant its issuance, it must appear that the writ will be effectual as a remedy, be of substantial or practical benefit to the petitioner, and serve a proper purpose; it is invariably withheld where it would be unavailing, nugatory, or useless and its issuance an idle act. Further, the writ will not issue to compel the performance of acts which can have no legal

effect, or if, by operation of law, compliance with the mandate can have no operative effect, or if, events occurring subsequent to the commencement of the proceeding would render the writ, if issued, nugatory, useless and unavailing. (52 Am. Jur. 2d, *Mandamus,* at pp. 360, 361.)

"In the instant case events occurring since the commencement of the proceedings and the trial would, in fact, render the writ, if issued, nugatory, useless and unavailing. There can be no utility at this time in ordering defendant to negotiate with an association which is no longer authorized to act as the exclusive representative of the professional employees of defendant. Furthermore, any such order could only result in unnecessary confusion at the present time. The Seaman Professional Education Association has not been substituted as party plaintiff in the instant proceedings. Indeed, said association has not demonstrated the slightest interest in the relief sought by the plaintiff, and no motion has been made by any party or interested group for such substitution. For these reasons, the Court, in the exercise of its discretion, denies the application of plaintiff for a permanent order of mandamus.

"The remaining issue concerns plaintiff's prayer for attorney's fees. The law in this jurisdiction is clear. K. S. A. 60-802 (*c*) provides:

" 'If judgment be given for the plaintiff, he may also recover such damages as he may have sustained by reason of failure of the defendant to perform the specified duty, together with costs.'

"By reason of the foregoing statute, plaintiffs are entitled to recover as damages attorney's fees in cases where a permanent order of mandamus has been issued. Said statute authorized the Court to award attorney's fees *only* when the Court renders final judgment issuing a permanent order of mandamus. Since no such judgment is rendered in the instant case, damages, including attorney's fees, may not be awarded to plaintiff. Moreover, although there was a breach of a statutory duty to negotiate 'in good faith' prior to the time this Court issued its temporary order of mandamus, as in *Liberal-NEA v. Board of Education,* 211 Kan. 219, and *National Education Association v. Board of Education,* 212 Kan. 741, the breach was occasioned by an honest belief on the part of the Board that it was doing all that the law required and said Board was acting upon the advice of counsel. Since the Supreme Court denied attorney's fees in said cases, it appears that plaintiff would not be entitled to such relief in the instant case.

"It is, therefore, ordered and adjudged that defendant's motion for involuntary dismissal be and the same is hereby sustained. It is further ordered and adjudged that the claims of plaintiff be and the same are hereby dismissed with prejudice. Costs are taxed to plaintiff."

Appeal has been duly perfected by the plaintiff from the orders of the trial court dismissing its claims with prejudice, taxing the cost to the plaintiffs, denying its request for a decree of permanent mandamus and denying its application for damages and attorney's fees.

The defendant has cross-appealed from the order of the trial court finding that the plaintiff had capacity to sue the defendant.

Turning to the cross-appeal, does the plaintiff have capacity to sue the defendant?

In 1970 the Kansas Legislature enacted K. S. A. 72-5413 through 72-5425 which extended the right to bargain collectively to professional and administrative employees of school boards. Under this statutory scheme the first step in providing collective bargaining for the teachers requires the creation of an exclusive statutory representative to represent the professional employees in negotiating with the school board. Provision is made for the selection of an exclusive representative or bargaining agent in K. S. A. 72-5415. In substance this section provides that the representative designated or selected for the purpose of professional negotiation by the majority of the professional employees shall be the exclusive representative of all professional employees in the negotiating unit, except administrative employees. (*Liberal-NEA v. Board of Education,* 211 Kan. 219, 505 P. 2d 651.)

The appellee (cross-appellant) argues the well established rule is that an unincorporated association, society or club is not a legal entity distinct from its members, and cannot sue in its own name, but the action must be brought by the members collectively or by an agent or committee authorized to sue for the organization, unless an enabling statute permits it to sue or be sued in the association's name. (*Brown v. United States,* 276 U. S. 134, 72 L. Ed. 500, 48 S. Ct. 288; *Grolier Society v. Foster,* 110 Kan. 306, 203 Pac. 920; *Ryan v. Ryan,* 156 Kan. 348, 133 P. 2d 119; *State Association of Chiropractors v. Anderson,* 186 Kan. 130, 348 P. 2d 1042; and *Kansas Private Club Assn. v. Londerholm,* 196 Kan. 1, 408 P. 2d 891.)

The foregoing authorities recognize that the legislature may by an enabling statute permit the unincorporated association to sue or be sued in the association's name.

Construing the various provisions of the Collective Negotiations Act (K. S. A. 72-5413 through 72-5425) as a whole discloses an intention on the part of the legislature to authorize a professional employees' organization of the teachers to sue or be sued in the association's name.

Professional employees are given the right to form, join or assist professional employees' organizations, to participate in professional negotiations with boards of education through representatives of their own choosing for the purpose of establishing, maintaining, protecting or improving terms and conditions of professional ser-

vice. (K. S. A. 72-5414.) Where an organization has been formed by professional employees in accordance with the act the school district is required to recognize the organization as the exclusive representative of the professional employees. (K. S. A. 72-5416.) Under the provisions of K. S. A. 72-5421, the representative of the professional employees, selected and designated as provided in the statutes, is given authority to enter into an agreement with the school district representative covering terms and conditions of professional service, which agreements become binding upon ratification by the respective parties.

K. S. A. 72-5424 provides that:

"A board of education and a professional employees' organization who enter into an agreement covering terms and conditions of professional service may include in such agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application or violation of such agreement."

It further provides:

"Where a party to such agreement is aggrieved by the failure, neglect or refusal of the other party to proceed to arbitration in the manner provided for in such agreement, *such aggrieved party may file a complaint in court for a summary action without jury* seeking an order directing that the arbitration proceed in the manner provided for in such agreement." (Emphasis added.)

Inferentially under the terms of the foregoing statute, the professional employees' organization is given the power and authority to file a complaint in court for a summary action without jury, seeking an order directing that arbitration proceed in the manner provided in the agreement.

A primary purpose of the collective negotiations statute was to provide a spokesman and representative for the individual professional employees for the protection and the improvement of their rights. We think the act itself enabling a professional employees' organization, organized pursuant to statute, to perform its statutory duties, responsibilities and functions permits the professional employees' organization to sue or be sued in the association's name. (See, *Liberal-NEA v. Board of Education,* supra.) Accordingly we conclude, the plaintiff had capacity to sue the defendant herein, and the trial court did not err in so ruling.

The legislature could have clarified this point as it has in K. S. A. 44-811, concerning labor organizations.

The appellant contends the trial court erred: (1) In its rulings, orders and decisions which failed to give meaning and effect to the

requirements of the Collective Negotiations Law, and in support thereof sets forth five particulars in which it is alleged the appellee failed to negotiate in a good faith effort to reach agreement; (2) in denying the appellant's request for the entry of a decree of permanent mandamus against the appellee; and (3) in its rulings, orders and determinations that the appellant was not entitled to its damages, expenses and attorneys' fees.

It is uncontroverted that *on May 14, 1973, the parties reached agreement on the 1973-1974 employment contract. This agreement was ratified by the teacher's unit represented by the appellant on May 15, 1973, and by the appellee on May 17, 1973, and subsequently approved by the court in its memorandum decision filed July 5, 1973.*

Many items upon which the appellant originally sought to negotiate were settled by agreement, and other items upon which negotiation was originally sought were abandoned by the appellant. These fruitful negotiations and the resulting agreement were reached after the action was filed and the court ordered further negotiations conducted. When the trial court issued its preliminary order of mandamus requiring the appellant and the appellee to resume forthwith professional negotiations in accordance with the provisions of the Act, the trial court further temporarily enjoined the appellee from the issuance of unilateral teacher contracts for the school year 1973-1974 from and after the 23rd day of April 1973, until the further order of the court.

On May 22, 1973, the appellant filed its first amended petition requesting that the court issue an order of mandamus and injunction forthwith enjoining and restraining the appellee, its agents, and employees, from unilaterally issuing individual contracts of employment to the certified employees of Unified School District No. 345; and that the court forthwith issue its mandatory injunction to the appellee to return to the negotiating table and to engage in good faith professional negotiations with reference to the terms and conditions of professional service with representatives of the appellant until the further order of the court, and that the appellant recover its damages, attorneys' fees and costs, and such further relief as the court shall deem just and proper. Subsequently the trial court on June 14, 1973, dismissed the second, third and fifth counts of appellant's amended petition pursuant to the appellee's motion for summary judgment. At the request of the ap-

pellant the court permitted the appellant to withdraw its fourth count of the amended petition. The second, third, fourth and fifth counts all pertained to the striking teachers.

K. S. A. 72-5423 (*b*) provides:

"Nothing in this act shall be construed to authorize a strike by professional employees."

As heretofore recited, the record discloses on April 16, 1973, three days after the appellee terminated negotiations prior to the filing of this action, approximately 83 professional employees who were members of the appellant association struck and picketed the appellee by failing to attend and instruct their assigned class duties. On the record here presented the trial court properly determined that the return of the striking teachers was not an issue for collective negotiations under the Collective Negotiations Act (K. S. A. 72-5413, *et seq.*). Efforts to negotiate this issue apart from the other issues was not submitted to the teachers' unit represented by the appellant for ratification, and the appellee rejected the proposal submitted on this issue.

To enforce the legislative mandate in the Act designed to prohibit a strike by professional employees our courts will give no assistance under the Act to professional employees who do strike.

The trial court properly ruled that the appellant association had no legal standing to assert claims for reinstatement on behalf of the suspended or terminated teachers.

It is clear the appellant's original petition and the first count of its amended petition are the same. As a result of the appellant's original petition, the parties, both the appellant and the appellee, were found by the trial court to have failed to properly discharge their duties to engage in professional negotiations in good faith and were required by the trial court to resume negotiations forthwith. Here the appellant affirmatively sought a judgment of the trial court which resulted in a negotiated agreement for 1973-1974 which was ratified according to law. Under these circumstances it must be said the appellant acquiesced in the judgment.

On the record here presented the appellant was completely successful following the hearing on its original petition—it procured a preliminary order of mandamus requiring the parties to resume forthwith professional negotiations in accordance with the Act, requiring the parties to negotiate in a good faith effort to reach agreement, and an order was issued temporarily enjoining the ap-

pellee from the issuance of unilateral teacher contracts for the school year 1973-1974. This successful effort on the part of the appellant led to a negotiated agreement on the 1973-1974 contract on May 14, 1973. The basic issue the appellant sought to have resolved was successfully concluded, and the appellant's ratification of the negotiated agreement constitutes an acquiescence in the judgment.

This court has repeatedly held anything that savors of acquiescence in a judgment cuts off the right to appellate review. (*Curry v. Perney,* 194 Kan. 722, 402 P. 2d 316; *Peters v. Peters,* 175 Kan. 422, 263 P. 2d 1019; *Cohen v. Dresie,* 174 Kan. 391, 256 P. 2d 845; *Newsome v. Anderson,* 164 Kan. 132, 187 P. 2d 495; *Sisk v. Edmonston,* 163 Kan. 394, 182 P. 2d 891; *Warner v. City of Independence,* 121 Kan. 551, 247 Pac. 871; and *Bank v. Bracey,* 112 Kan. 677, 212 Pac. 675.)

It follows the appellant's contention that the appellee failed to negotiate in good faith upon the various factual issues asserted by the appellant, prior to the termination of negotiations and the filing of this action, is moot. Under the circumstances the trial court was also correct in its refusal to grant a permanent order of mandamus. The issuance of the writ would not be of any practical benefit to the appellant or serve a proper purpose. In fact, the appellant is no longer recognized as the representative of the professional employees of the appellee as required by law. (K. S. A. 72-5416.) The Seaman Professional Educators' Association of Kansas is now the exclusive representative of the professional employees of the appellee, and it has shown no interest in this case. It has not been substituted as a party to the action.

The appellant contends the trial court erred in holding that it was not entitled to its damages, expenses and attorneys' fees.

When this case was before the trial court the Supreme Court of Kansas had not spoken on the subject of the Kansas Collective Negotiations Act. The first time it examined the substantive provisions of the Act was in *National Education Association v. Board of Education,* 212 Kan. 741, 512 P. 2d 426. Many similarities exist between the two cases, except that here the parties did reach an agreement on the claims negotiated and ratified the negotiated agreement for the 1973-1974 school year.

Other than legal expenses and attorneys' fees the record is silent as to any additional damages or expenses. Under these circumstances our decision on the point in question is controlled by what

was said in *National Education Association v. Board of Education,* supra, at page 756:

"NEA insists it should have attorney fees because the trial court's granting of mandamus necessarily implies that the Board was not negotiating 'in good faith' as required by the statute—despite the Board's reliance on the advice of counsel.

"The contention is largely answered by *Liberal-NEA v. Board of Education,* supra, where we denied attorney fees while holding that a mandamus order should have been issued. We there noted:

" '. . . We have held that the underlying test to determine whether or not damages and attorney fees should be allowed in a mandamus action is whether the refusal of the public official, commission or board to perform the duty imposed by law was reasonable under all the facts and circumstances. (*Barten v. Turkey Creek Watershed Joint District No. 32,* 200 Kan. 489, 438 P. 2d 732.)' (p. 233.)

"There, as here, there was a breach of statutory duty to negotiate 'in good faith.' There, as here, the breach was occasioned by subjective good faith belief on the part of the board that it was doing all the law required of it. There, as here, there was a first encounter with a new and complicated law, in which both parties were uncertain of their footing.

"The trial court here found that both parties acted in the utmost good faith in their efforts to comply with the act as they understood it. That finding is amply supported by the record. The fact that the Board's legal premise may have proved to be faulty in some respects, after this court has spoken on the subject for the first time, does not make their conduct in the first instance 'unreasonable.' We, therefore, concur in the trial court's finding that attorney fees should be denied."

In the instant case the trial court denied damages, including attorneys' fees, on the ground that the Board's failure to negotiate in good faith, prior to the time the trial court issued its temporary order of mandamus, was occasioned by an honest belief on the part of the Board that it was doing all that the law required, and that the Board was acting upon the advice of counsel. Evidence in the record supports these findings of the trial court. Under the circumstances the trial court did not err in denying legal expenses and attorneys' fees in the instant case.

The judgment of the lower court is affirmed.

FROMME, J., not participating.