No. 86,962

312 EDUCATION ASSOCIATION, *Appellant*, v. U.S.D. No. 312, *Appellees.*
(47 P.3d 383)

Opinion filed May 31, 2002.

*David H. Moses*, of Case, Moses, Zimmerman & Wilson, P.A., of Wichita, argued the cause and was on the brief for appellant.

*John E. Caton*, of Martindell, Swearer & Shaffer, LLP, of Hutchinson, argued the cause, and *Myndee M. Reed*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

LARSON, J.: This appeal raises questions of standing, waiver, construction of contracts, and contract negotiations between an education association and a unified school district.

During a period of contract negotiations between the 312 Education Association (312 E.A.), a professional association of teachers employed at Unified School District No. 312 (U.S.D. 312 or District), which ultimately went to impasse, 312 E.A. filed grievances against the District for improperly placing a beginning teacher on the second rather than the first step of the District's pay scale.

The first grievance filed by 312 E.A. was heard by the Superintendent of Schools, denied, and not further pursued. A second grievance raising the same contention was filed by 312 E.A, denied by the Superintendent, and then denied by the District's school

board. From this denial, 312 E.A. appealed to the district court, pursuant to K.S.A. 60-2101(d).

The district court granted U.S.D. 312's motion to dismiss for lack of standing. 312 E.A. appeals. Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer on our own motion).

*Factual and procedural background*

We first detail the actions of the parties and the pertinent parts of the various documents which we are called on to construe.

312 E.A. and U.S.D. 312 were negotiating the terms of the 2000-01 contract in June 2000, when 312 E.A filed a grievance with U.S.D. 312, contending Article IV(B)(2) of the 1999-2000 negotiated agreement had been violated. 312 E.A. alleged a "beginning teacher for the school year 1999-2000 was placed on Step 2 instead of Step 1 as defined specifically in the contract." It was indicated to be a level 2 grievance and the remedy sought was: "All teachers new to the district will be placed on the salary schedule according to the terms of the contract."

The grievance was signed by the chief negotiator and president of 312 E.A. The remedy sought could be construed as asking that the beginning teacher referred to be reduced one step on the salary schedule.

The response from the Superintendent of U.S.D. 312 stated (1) both parties were discussing the step placement issue, (2) the agreement allows "teachers," not 312 E.A., to file grievances but also stated: "However, this time, it will be dealt with as though properly filed," (3) the agreement was not violated as the person involved had relevant educational experiences, (4) the association had proposed a more lenient placement policy in its latest negotiating proposal, and (5) if further discussion was desired, he was available at a stated date and time 1 week later.

The 312 E.A. did not appear at the time offered and neither party did anything further of record as to this first exchange.

On September 29, 2000, 312 E.A. filed another grievance with the District. This was indicated to be a level 3 grievance with the same claim based on the same contract provision (Article IV B [2])

(improper step placement of a beginning teacher), but the remedy sought was materially different:

"All teachers under contract for the 1999-2000 school year will be advanced one step with the exception of the individual previously advanced for that school year, OR, alternately, beginning first year teachers who were placed on step one for the contract years 1999-2000 and 2000-2001 will be advanced one step. Both of these remedies would be retroactive to each teacher's hire date, plus interest."

The October 10, 2000, response from the Superintendent reiterated that the complaint was not filed by a "teacher" or within the time specified in the contract, but the Board, "in a continuing effort to demonstrate, yet another, good faith effort to deal constructively with teacher complaints," agreed to "formally hear the complaint on October 16, 2000, at 7:30 p.m. in the Board Room at the District office in Haven."

The letter concluded:

"It must be clearly understood that the Board's decision to hear this complaint, which does not comply with negotiated agreement procedures, may not be construed as a waiver of the Board's right to insist upon compliance with the negotiated contract's provisions in the future."

The Board considered the grievance and affirmed "the placement of the teacher on the salary schedule and that such placement is in accordance with the negotiated agreement and that the board has the authority to determine the placement of teachers on the salary schedule." The Board informed 312 E.A of its decision by a letter dated October 26, 2000, stating:

"In reaching it's decision, the Board considered your written grievance and your statements to the Board, the statements of Mr. Chadwick, the District's superintendent, and copies of written materials relating to the subject of your grievance appeal. On the basis of such information, the Board determined the actions and previous decisions of the District superintendent should be confirmed."

The record reflects that 312 E.A. next filed on November 3, 2000, a complaint against U.S.D. 312 with the Kansas Department of Human Resources (Labor Relations Section), wherein it was alleged U.S.D. 312 had engaged in prohibited practices within the meaning of K.S.A. 72-5430(b)(5) (essentially, a claim of refusal to

negotiate in good faith) by the placement of the teacher in step 2 instead of step 1 as required by the contract language.

The relief sought was identical to that requested from U.S.D. 312 in the second grievance, with an additional request for an order requiring U.S.D. 312 to negotiate in good faith and posting for 30 days in a conspicuous place the District's acknowledgment that it committed the prohibited practice.

On November 21, 2000, 312 E.A. filed an appeal in district court pursuant to K.S.A. 60-2101(d) from the Board's rejection of its September 29, 2000, grievance.

U.S.D. 312 filed a motion to dismiss, contending (1) 312 E.A. lacked standing to pursue the grievance under the provisions of the Negotiated Agreement for 1999-2000, (2) 312 E.A., as a voluntary association, had no standing to assert a grievance or claim for the interest of one class of the employees it represents at the expense or contrary to the best interests of one or more other professional employees, (3) the grievance procedures under the negotiated agreement were available to individual teachers and made no reference to rights of 312 E.A. to initiate a grievance, (4) the appeal constituted an improper attempt to interfere with, restrain, or coerce U.S.D. 312 with respect to pending contract negotiations under K.S.A. 72-5413 *et seq.*, where one of the issues being negotiated is the placement of professional personnel on the District salary schedule, and (5) the 312 E.A. had failed to exhaust its administrative remedies when it filed on November 3, 2000, a complaint before the Kansas Department of Human Resources, requesting the same relief it had requested in the grievance filing.

312 E.A.'s response contended (1) the District's improper placement of the teacher on the salary schedule allowed 312 E.A., as the statutory professional employees' organization charged with improving employees rights, the right and obligation to file the grievance, citing *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 387, 996 P.2d 821 (2000), and *Seaman Dist. Teachers' Ass'n v. Board of Education*, 217 Kan. 233, 535 P.2d 889 (1997), (2) the District, by acceptance of the grievance and agreement to hear the grievance, waived any claim of procedural defects in this instance, (3) the association met the representation test because it had the

right and duty to seek enforcement of the negotiated agreement, (4) the negotiation process was not an issue in the present case as it involved a yet to be agreed upon agreement, and (5) it was not obligated to exhaust administrative remedies, as a prohibited practice allegation under K.S.A. 72-5430 differs from an appeal mandated under K.S.A. 60-2101(d) for the several reasons it had enumerated.

312 E.A. also referred to an earlier Reno County District Court case involving the Hutchinson Community College and its faculty association where a grievance was allowed to be filed by a professional association. U.S.D. 312's response pointed out the language of the negotiated agreement therein involved was materially different and this case does not seem to have been further considered.

After the submission of briefs and oral arguments, the trial court rendered its memorandum decision in which it granted the motion to dismiss on the grounds that 312 E.A. failed the third prong of the association representation test. The trial court's conclusions of law recognized that the appeal was one made under K.S.A. 60-2101(d), recognized that teachers are professional employees who may be represented by an appropriate negotiating unit, and recited language found in K.S.A. 72-5415(a). The decision continued:

"6. The Plaintiff, pursuant to 5415(a), supra, is the exclusive representative of *all* the teachers (or professional employees) employed by the Defendant Board for the purpose of professional negotiations in matters concerning the contracts of teachers.

"7. Article V of the Parties' Negotiated Agreement for 1999-00 is entitled, 'Teachers Recourses.' Section B of that article deals with the grievance procedure. It is noted by the Court that the entire Section B mentions *only* the right of a teacher to file a grievance, not the professional association of teachers.

"8. The Plaintiff, in this case, does not have standing to pursue this appeal. See: *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333; *NEA-Coffeyville v. Unified School District No. 445*, 268 Kan. 384; *Warth v. Seldin*, 422 U.S. 490. Under the three-pronged test in *Hunt*, supra, and followed by our Kansas Supreme Court, the Plaintiff fails number three:

'An association has standing to sue on behalf of its members when: (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested require participation of individual members.'

Here, the relief requested requires the participation of individual members or a member.

"9. The Plaintiff has a conflict of interest in this case in that it has a contractual duty to represent the interests of *all* the teachers. At least one teacher's interests in this case would be adverse to the stated purpose of the lawsuit.

"10. The Plaintiff, of course, has the right to balance and even disregard individual teachers' interests when the parties are negotiating a contract.

"11. The Court does not need to discuss other arguments by the parties in view of this ruling."

It is from this decision that 312 E.A. appeals.

Under Article IV(B)(2), regarding compensation, the agreement states: *"Placement on a Step*: Step placement may not correspond with actual years of experience. Beginning teachers will be placed on the first step. Experienced teachers will be placed on the appropriate step based [*sic*] years of experience."

Article V(B) defines the grievance procedure. Subsection (B)(1) states that "[i]t is the declared policy of the U.S.D. 312 to encourage the prompt and informal resolution of teacher's complaints, and to provide recourse to orderly procedure for adjustments of complaints." Subsections (B)(2)(a) and (b) define a grievance and a teacher:

"a.   A grievance is an alleged misinterpretation, misapplication, or a violation of the provisions of the Agreement, of the rules, regulations, or policies of the school board or a violation of the law.

"b.   A 'teacher' is one or more teachers in the bargaining unit."

The grievance procedure consists of three steps. First, a teacher presents a complaint in writing to the head administrator over his or her section within 30 days of acquiring knowledge of the complained-of action. The two confer and a written decision with supporting reasons is issued. Second, if the grievance is not yet resolved, the teacher may appeal to the Superintendent, who also is required to hear the matter and issue a written decision. The written opinion must be issued within 10 days of conferencing the matter. Third, assuming the matter is still unresolved, the teacher may appeal to the Board of Education. The Board must meet within 20 days of receipt of the appeal and issue an opinion within

10 days of the hearing. Time limits may be extended by mutual agreement.

The negotiated agreement does not include 312 E.A. as a party to the grievance procedures. The only references to 312 E.A. are found in the last section of the contract, under the heading "CONTRACT DURATION." The two subsections under that Article read in part:

"A. *Reopener Clause:* By mutual agreement, negotiations between the Board and 312 Educational Association may be reopened to permit amendment to sections of this agreement prior to the fulfillment of the contract year.

"B. Items Ratified: All items ratified by the Board of Education and 312 Education Association shall become a part of the teacher's contract and be attached thereto."

## Standards of review

This matter is before us as an appeal from the trial court's granting of a motion to dismiss. We recently summarized our standard of review of such a ruling in *Prager v. Kansas Dept. of Revenue,* 271 Kan. 1, 10, 20 P.3d 39 (2001), as follows:

"The manner in which motions to dismiss should be reviewed was recently set forth in *Ripley v. Tolbert,* 260 Kan. 491, Syl. ¶¶ 1, 2, 921 P.2d 1210 (1996), where we said:

'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.'

"In *Noel v. Pizza Hut, Inc.,* 15 Kan. App. 2d 225, 230-233, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991), which relied on *Bruggeman v. Schimke,* 239 Kan. 245, 247-48, 718 P.2d 635 (1986), the court applied the general rule for reviewing motions to dismiss for failure of a party to state a claim for relief:

> '[I]t is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine.
>
> 'There are sound reasons for exercising judicial skepticism towards dismissal of a petition for failure to state a claim prior to the completion of discovery.' 15 Kan. App. 2d at 231."

With the lower court's dismissal of 312 E.A.'s appeal based on lack of standing and specifically due to its failure of the association representation test, we review the issue of whether a party has standing to sue as a question of law subject to unlimited review. *State ex rel. Board of Healing Arts v. Beyrle,* 269 Kan. 616, 624, 7 P.3d 1194 (2000); *Robinson v. Kansas State High School Activities Ass'n,* 260 Kan. 136, 139, 917 P.2d 836 (1996).

*Analysis*

Although we have recently considered questions of standing to sue under numerous circumstances, see *Kansas Bar Ass'n v. Judges of the Third Judicial District,* 270 Kan. 489, 496, 14 P.3d 1154 (2000); *Families Against Corporate Takeover v. Mitchell,* 268 Kan. 803, 810, 1 P.3d 884 (2000); *NEA-Coffeyville v. U.S.D. No. 445,* 268 Kan. 384, 387, 996 P.2d 821 (2000); see also *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977); *Warth v. Seldin,* 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975), our comments in *Harrison v. Long,* 241 Kan. 174, 176, 734 P.2d 1155 (1987), well summarize the difficulty this issue raises where Justice Lockett, speaking for a unanimous court, said:

> "Standing has been called one of the most amorphous concepts in the entire domain of public law. Annot., 50 L. Ed. 2d 902, 904. The United States Supreme Court has stated that, in its constitutional dimension, standing imparts justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III of the U.S. Constitution. The court has emphasized that this is the threshold question in every federal case determining the power of the court to entertain the suit. *Warth v. Seldin,* 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).
>
> "Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Warth v. Seldin,* 422 U.S. at 498-99. 'Standing to sue' means that a party has sufficient stake in an

otherwise justiciable controversy to obtain judicial resolution of that controversy. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1003, 667 P.2d 879 (1983)."

The cases relied on by 312 E.A. to claim standing, *NEA-Coffeyville* and *Seaman Dist. Teachers' Ass'n*, do not support its position as well as it indicates.

*Seaman Dist. Teachers' Ass'n* primarily involved the Collective Negotiations Act (K.S.A. 72-5413 though 72-5425) and proceedings thereunder and we do not believe it is authority for 312 E.A.'s standing under these facts.

The holding and result in *NEA-Coffeyville*, while based on substantially different facts, must be considered as it is closer to our situation than *Seaman*. In *NEA-Coffeyville*, the battle was over a Blue Cross Blue Shield health insurance refund. We held that under the facts, the grievance procedure, although administrative, was not an adequate one and we allowed *NEA-Coffeyville* to sue the school board directly. As to standing we said:

"NEA-C, as the exclusive bargaining agent for the District's teachers, has standing to sue where the protection of teachers' rights is at issue. See K.S.A. 72-5414.

"The United States Supreme Court has held that an association has standing to sue on behalf of its members when: (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested require participation of individual members. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1997).

"NEA-C satisfies the requirements of the above test. Its members are identified as beneficiaries of the District's BCBS contract. As such, the members have standing to sue individually under a third-party beneficiary theory. See *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, Syl. ¶ 1, 736 P.2d 930 (1987). Moreover, the interest NEA-C seeks to protect is the monetary refund from insurance contracts made for the members' benefit and generated by their conduct. Finally, none of the individual member's participation is necessary. We conclude that NEA-C is a proper party plaintiff." 268 Kan. at 387.

Our case is materially different, as here the District considered 312 E.A.'s appeal as one from a sufficient administrative body, which is directly opposite from our court's conclusion in *NEA-Coffeyville*. If, in fact, 312 E.A.'s present appeal is to be treated as one made on behalf of the membership of the association, the

associational test of *Hunt* as previously articulated in our cases would apply. We will therefore consider, as 312 E.A. appears to concede, that the three-part test set out in *Hunt* must be satisfied.

We have said several times that "an association has standing to sue on behalf of its members when: (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested require participation of individual members." *NEA-Coffeyville,* 268 Kan. at 387; accord, *Families Against Corporate Takeover v. Mitchell,* 268 Kan. at 810 (both relying on *Hunt,* 432 U.S. at 343).

Both parties agree that the first two elements are met. Individual members of the 312 E.A. could and possibly should have filed the grievance. The interest sought to be protected appears to be germane to 312 E.A.'s organizational purpose. Thus, the question remains, does the claim asserted and the relief requested require participation of individual members?

The trial court's ruling that 312 E.A. "has a conflict of interest in this case in that it has a contractual duty to represent the interests of *all* the teachers. At least one teacher's interests in this case would be adverse to the stated purpose of the lawsuit" has a nice ring to it, but if the requested remedy were granted (a result we assume for purposes of the motion to dismiss but which we do not concede), it would not necessarily be adverse to the one teacher who might well be entitled to remain on the step in the salary schedule which he negotiated with the District. The requested relief was advancement of one step for either all teachers or, alternatively, beginning first-year teachers. Assuming such relief should be granted (which we do only for our consideration of a motion to dismiss based on standing), it does not appear the requested relief is contrary to the interests of any of the 312 E.A.'s members.

This does not mean, however, that standing exists under the facts of our case. The District makes additional arguments that 312 E.A. has alleged neither monetary damages to itself nor assignment of damages from its members and thus the claim requires the participation of individual members. In addition, the District argues 312 E.A. lacks standing because the claim for damages is not common

to *all* of the teacher members of 312 E.A., nor are the damages shared by all members in equal degree. These arguments rely on *Warth v. Seldin*, 422 U.S. 490, which we do not believe supports the District's contentions.

In *Warth*, several claimants including a home builder association claimed monetary damages against a town and some of its officials for zoning restrictions which the association alleged caused its members to loose business. In holding the association lacked standing, the Supreme Court opinion stated:

"As noted above, to justify any relief the association must show that it has suffered harm, or that one or more of its members are injured. *E.g., Sierra Club v. Morton*, 405 U.S. 727[, 31 L. Ed. 2d 636, 92 S. Ct. 1361] (1972). But, apart from this, whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. *E.g., National Motor Freight Assn. v. United States*, 372 U.S. 246[, 9 L. Ed. 2d 709, 83 S. Ct. 688] (1963). See *Data Processing Service v. Camp*, 397 U.S. 150[, 25 L. Ed. 2d 184, 90 S. Ct. 827] (1970). Cf. Fed. Rule Civ. Proc. 23(b)(2).

"The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such." 422 U.S. at 515.

*Warth* appears to make the crucial standing test to be whether the relief requested inures to the benefit of the members of the association actually injured. 312 E.A. is not seeking monetary damages for itself but rather is seeking an increased salary step for all teachers or, alternatively, for all other beginning teachers. The home builders association in *Warth* was seeking a monetary damage award in its own name, not for damages caused to itself but to its members and, according to the *Warth* opinion, was doing so without assignment from the damaged members of any of their claims.

There *is* language in the section of the *Warth* opinion referred to above which gives comfort to U.S.D. 312 in its arguments regarding the failure of the damage claims to be of an equal degree. The *Warth* opinion said:

"Moreover, in the circumstances of this case the damage claims are not common to the entire membership, nor shared in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf." 422 U.S. at 515-16.

In our case, the damages claimed, although made alternatively, are the same for each class member. Although we have doubts as to such claim being a proper remedy even if a breach did occur, for purposes of considering standing under a motion to dismiss, we resolve this doubt in 312 E.A.'s favor. We do not believe that each association member must be entitled to identical relief in order for association standing to exist. We appear to have held to the contrary in *NEA-Coffeyville* where different amounts appeared to be owing to different teachers based on their services for different portions of the years for which the insurance refunds were issued.

This analysis still does not show that 312 E.A. satisfies the association representation test for, as we have previously stated, the third prong of *Hunt* requires that "neither the *claim asserted* nor the *relief requested,* may require participation of individual members." *NEA-Coffeyville,* 268 Kan. at 387. The *claim asserted* portion of the third *Hunt* prong was considered and applied in *Kansas Health Care v. Kansas DSRS,* 958 F.2d 1018 (10th Cir. 1992).

In the 10th Circuit case, it was held that association members who were health care service providers lacked association standing to challenge medical reimbursement rates set by SRS because proof and resolution of claims would unavoidably require individual participation of the associations' members. The unanimous opinion written by Judge Tacha reasoned that "in order to resolve plaintiffs' claims, we will be required to examine evidence particular to individual providers." 958 F.2d at 1022. The opinion, as does ours, did not focus on the merits of the plaintiffs' claims, but

was directed to the "claim asserted" portion of the *Hunt* third prong.

Our previous analysis has been of the relief requested, and when we move to a claim asserted analysis we must examine the claim or claims of 312 E.A. in order to determine if participation by individual members would be required. There is no question but that the teacher who it is contended was improperly placed on the wrong salary step would of necessity be individually involved as U.S.D. 312's defense to the claim, as stated in the Superintendent's correspondence, was that the teacher placed on step 2 had relevant experience which would justify his placement. This appears to be specifically allowed by the contract, which states: "Step placement may not correspond with actual years of experience. Beginning teachers will be placed on the first step. Experienced teachers will be placed on the appropriate step based [*sic*] years of experience."

Furthermore, as to the claim asserted for beginning teachers, it appears necessary to determine their experience level to see if they had been properly placed on the salary schedule. Evidence relating to each of such teachers may have to be separately examined. In order to properly litigate 312 E.A.'s claim, participation of individual members from the association would appear to be required in order to resolve the *claim asserted* portion of the association representation test.

An examination of the negotiated agreement in its totality also appears to prevent 312 E.A. from having standing. This is a question of law subject to plenary review, and we are not bound by the construction given by the trial court. See *First Financial Ins. Co. v. Bigg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

There is neither exclusion nor inclusion of 312 E.A. in the grievance procedure. The agreement says only that "[a]ny *teacher* may . . . present a formal grievance." (Emphasis added.) "Teacher" is defined as "one or more teachers in the bargaining unit."

The policy of the grievance procedure may be for the "prompt and informed resolution of teacher's complaints," but this gives 312 E.A. no greater stature than provided for in the negotiated agreement.

Neither *NEA-Coffeyville* nor *Seaman* involved grievances under negotiated agreements but rather lawsuits separate and distinct from the rights conveyed in the agreement. We did say in *NEA-Coffeyville* that "[w]e are not at liberty to revise an agreement to implement an unexpressed intention." 268 Kan. at 405. Clearly, the parties could have made 312 E.A. a party to the grievance procedure had they intended to do so, but, having not done so, this supports the conclusion that 312 E.A. was not to be a party to the grievance proceedings.

The only mention of 312 E.A. has been previously quoted and falls under the broad heading in the agreement of "CONTRACT DURATION." The most reasonable reading of the entire contract is that 312 E.A. is not a proper party to the grievance procedure.

This position appears to have been articulated by U.S.D. 312 through its Superintendent in both the letter responses dated June 14, 2000, and October 10, 2000. We thus agree with the trial court's ruling that standing does not exist, although not for the same reasons the trial court did. Unfortunately, this does *not* resolve the case, for 312 E.A. has a claim of waiver that must be considered.

The question is, did the District waive the standing defense by its actions and the language of its letters, principally when it said in the October 10, 2000, response:

> "It must be clearly understood that the Board's decision to hear this complaint, which does not comply with negotiated agreement procedures, may not be construed as a waiver of the Board's right to insist upon compliance with the negotiated contract's provisions in the future."

We express no opinion as to the meaning and effect of this language or the actions of the District, but hold this is an issue to be resolved by the trial court. In the event the language is deemed ambiguous and parol evidence allowed (an issue again on which we express no opinion), the trial court and not an appellate court would be the place where these issues should be decided.

There are also numerous additional issues that would have to be resolved even if waiver of standing was found to exist.

The trial court would need to determine the status of the 312 E.A. claim before the Department of Human Resources. The trial

court would be required to find the teacher placed on step 2 was improperly placed. This would appear to require taking of evidence. If a breach was ultimately found, the trial court may have to examine at least the experience of beginning teachers to determine if they have properly asserted a claim and the larger and more difficult question of whether any damages would be owing even if the one teacher was improperly placed.

We hold that all of these questions, and surely others which may arise if this matter continues, should be resolved by the trial court, beginning with consideration of the waiver question.

Reversed and remanded with directions.