NOT DESIGNATED FOR PUBLICATION

No. 114,196

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
*Appellee*,

v.

MARK BARTLING AKA MARK B. BARTLING, *et al*.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed April 22, 2016. Affirmed in part, reversed in part, and remanded.

*Paul D. Post*, of Topeka, for appellant.

*Aaron M. Schuckman*, of Millsap & Singer, LLC, of St. Louis, Missouri, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam*:  The Bartlings appeal from the district court's finding in favor of Federal National Mortgage Association [FNMA] on its mortgage foreclosure action as well as on the Bartlings' counterclaims. We affirm the decision as to the mortgage foreclosure but reverse as to the counterclaims.

*Procedural background*

The underlying facts are undisputed. On November 10, 2006, Mark and Tanya Bartling executed a promissory note and mortgage with American Mortgage Network,

1

Inc., after receiving a loan. The mortgage, recorded on November 13, 2006, was later assigned from Mortgage Electronic Registration Systems, Inc., (MERS) to Federal National Mortgage Association (FNMA) on March 14, 2011, which was after FNMA filed its foreclosure action against the Bartlings. The Bartlings' monthly mortgage payment was in the amount of $800.39; the total monthly payment, including taxes and insurance, was in the amount of $1,220.12.

In March 2009, a few years after executing the note and mortgage, Mark lost his job. Due to Mark's unemployment, Tanya contacted Chase Home Finance, LLC (Chase), the servicing bank, to inquire about a loan modification or other payment options. Tanya was informed she could apply for a loan modification, but she had to be 2 months in arrears in order to qualify for the Making Homes Affordable Program. The Bartlings were asked to send in required documents and immediately did so.

During her deposition, Tanya was asked if anyone at Chase told her their loan would be modified. She said, "It was my understanding from the person that I spoke with that, yes, we did qualify." She was further asked whether anyone had expressly informed her that their loan would be modified. She replied, "Yes, upon review." When asked who told her that information, Tanya responded, "Actually everybody." She also stated Chase continuously requested various documents, and each time the Bartlings sent in the information and Tanya followed up to make sure everything was in order.

Approximately 6 months after Mark lost his job, the Bartlings received a document from Chase which the Bartlings believed provided a "modified loan payment" or "trial payments." The document's title was "Instructions for Forbearance Plan," and it included a "Forbearance Plan Agreement." The forbearance plan agreement provided that three payments in the amount of $1,051.24 were to be made, followed by a payment in the amount of $7,905.76. The document concluded with: "Any delinquency will be reported in accordance to the terms of the Note and security instrument without regard to

this instrument." The Bartlings signed the agreement in September 2009. The Bartlings made payments in the amount of $1,051.24 beginning in September 2009 and made not only three payments but continued to make the same monthly payment until December 2010. The Bartlings never made the $7,905.76 payment.

In October 2010, the Bartlings' loan was transferred from Chase to LBPS, now known as Seterus. Three letters from LBPS acknowledged receipt of payment and included the following statement: "Although LBPS has accepted this payment, your loan remains in default and may be subject to the creditor initiating foreclosure and/or repossession proceedings." Tanya testified that every time she received a letter stating their loan was in default, she would contact a representative but was told to disregard that information and not to worry about the letters stating they were in default. The representative informed her "there were thousands of these going through loan modifications. And that [the Bartlings] weren't the only ones and that it was going to take time." Tanya was told to call back in 2 weeks.

In January 2011, FNMA filed an action seeking to: (1) secure a judgment against the Bartlings for $119,618.68, plus interest due under the note, and fees; and (2) foreclose on the mortgage, signed by the Bartlings, securing the note. The Bartlings initially filed a pro se answer, then filed an amended answer which included counterclaims against FNMA. FNMA moved for summary judgment. The district court granted the motion, finding no evidence had been presented to establish the existence of a written agreement signed by both parties which modified the terms of the promissory note and mortgage, as required under K.S.A. 16-118. Additionally, the district court dismissed the Bartlings' counterclaims with prejudice. The Bartlings timely appeal.

I.      DO WE HAVE JURISDICTION TO CONSIDER THE BARTLINGS'
        APPEAL?

On appeal, the Bartlings contend the district court failed to address their counterclaim of fraud and instead resolved only their claims under the Kansas Consumer Protection Act (KCPA). The Bartlings argue FNMA failed to move for summary judgment on their fraud claims, leaving a genuine issue of material fact.

We first set forth our standard of review. Because an appellate court has a duty to question jurisdiction on its own initiative, we address this issue now. When the record discloses a lack of jurisdiction, it is the duty of the appellate court to dismiss the appeal. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). An appeal may be taken to the Court of Appeals, as a matter of right, from any final decision. K.S.A. 2015 Supp. 60-2102(a)(4). Under Kansas law, a judgment is final and appealable only if it finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for future or further action by the court. *Flores Rentals v. Flores*, 283 Kan. 476, 481-82, 153 P.3d 523 (2007).

The Bartlings' first amended answer included a "Counterclaim" section with 11 numbered paragraphs. The Bartlings later filed an additional answer and added a specific claim of "actual fraud or fraud by silence." Whether that separate answer was properly filed was never challenged. Instead, at the hearing on the motion, FNMA noted the claims were listed under a single heading but addressed both the KCPA and fraud claims. At a second hearing, FNMA again addressed the KCPA and the fraud claims, although both were included in one count. The district court's journal entry of judgment similarly

4

treats the counterclaims as multiple and not singular in holding that "[the Bartlings'] Counterclaims in this proceeding are hereby dismissed with prejudice."

Regardless of whether the Bartlings pleaded one counterclaim or two, the district court ruled on all of the claims and counterclaims in the case, both at oral argument on the summary judgment motion and in the journal entry, making the judgment final. Therefore, we have jurisdiction to consider the Bartlings' appeal.

II.    DID THE DISTRICT COURT ERR BY FINDING FNMA HAD STANDING TO FILE THE FORECLOSURE ACTION?

The Bartlings argue FNMA lacked standing when it filed the foreclosure action because it was not the holder of the note when the action was filed. The parties agree that the mortgage was assigned from MERS to FNMA on March 14, 2011, which was after FNMA filed its foreclosure action against the Bartlings. But FNMA acquired the note in December 2006, so FNMA held it before this foreclosure action began.

We first set forth our standard of review. Standing to bring an action is a component of subject matter jurisdiction and may be raised at any time. *Stechschulte v. Jennings*, 297 Kan. 2, Syl. ¶ 11, 298 P.3d 1083 (2013). The existence of jurisdiction and standing are both questions of law over which this court's scope of review is unlimited. *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 830, 104 P.3d 378 (2005) (jurisdiction); *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002) (standing).

The Bartlings executed a promissory note and mortgage with American Mortgage Network, Inc.  The powers and obligations of the parties to the mortgage are set in the mortgage itself. The Bartlings were the "Borrowers," and American Mortgage Network, Inc., was the "Lender." The mortgage provided the following:  "MERS is a separate

5

corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." This language plainly confers upon MERS the rights to assign the mortgage to FNMA. MERS, acting as nominee, assigned the mortgage from American Mortgage Network, Inc., to FNMA after the petition had been filed. The Bartlings do not challenge the assignment of the mortgage from MERS to FNMA. MERS, acting as a nominee, was entitled to assign the mortgage to FNMA.

For FNMA to have standing to enforce the note it must be: "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to K.S.A. 84-3-309 or 84-3-418(d)." K.S.A. 84-3-301. A "holder" is defined as:

> "(A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; or

> "(B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

> "(C) the person in control of a negotiable electronic document of title." K.S.A. 2015 Supp. 84-1-201(b)(21).

One in possession of the note should be regarded as having a perfected security interest in that note, with the mortgage to follow. *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 18, 774 P.2d 919 (1989). "It is a well-established general rule that the possession of negotiable paper proves prima facie the ownership of the holder. [Citations omitted.]" *King v. Bellamy*, 82 Kan. 301, 302, 108 P. 117 (1910). As a valid holder of a note, a party has such an interest sufficient to give it standing in a foreclosure action. *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 225, 286 P.3d 1150 (2012).

6

Kansas has long held that the holder of the note is also the holder of the mortgage securing it, as the mortgage follows the note. See *Anthony v. Brennan*, 74 Kan. 707, 708-09, 87 P. 1136 (1906); *U.S. Bank N.A. v. McConnell*, 48 Kan. App. 2d 892, 901, 305 P.3d 1, *rev. denied* 298 Kan. 1208 (2013) (cases cited therein).

In this case, FNMA stated on the record that it was the holder of the original note and had possession of the original note and mortgage. Jon Greenlee indicated in his deposition that FNMA acquired the note in December 2006, well before this suit was filed. That assertion was not contradicted. Because the mortgage followed the note and there is no genuine fact issue about FNMA being the holder of the note at the time suit was filed, FNMA had standing to pursue this action. *McConnell*, 48 Kan. App. 2d at 901.

III.     DID THE DISTRICT COURT ERR BY GRANTING SUMMARY JUDGMENT TO FNMA ON ITS MORTGAGE FORECLOSURE ACTION?

On appeal, the Bartlings claim they entered into a loan modification with Chase. FNMA claims the Bartlings received only a forbearance plan agreement in September 2009 and not a loan modification. FNMA further claims the Bartlings failed to perform as required by the terms of the note and mortgage and the subsequent forbearance plan, thus defaulting on the loan. The Bartlings rely on parol evidence in order to show the parties entered into a loan modification, rather than a forbearance plan, and thus contend the loan was not in default.

*Summary judgment standard*

We first set forth our standard of review. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to

7

resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

*Actions based on credit agreements*

The primary purpose of a mortgage is to insure the payment of the debt for which it provides security, and foreclosure is allowed when necessary to carry out that objective. *Bank of America v. Inda*, 48 Kan. App. 2d 658, 664, 303 P.3d 696 (2013). Promissory notes and mortgages are contracts between the parties to which the ordinary rules of contract construction apply. *Hansen*, 48 Kan. App. 2d at 223. In order to grant summary judgment in a mortgage foreclosure action, the district court must find undisputed evidence in the record that: (1) the defendant signed a promissory note secured by a mortgage; (2) the plaintiff is the valid holder of the note and mortgage; and (3) the defendant has defaulted on the note. *Hansen*, 48 Kan. App. 2d 213, Syl. ¶ 1.

This issue requires us to interpret K.S.A. 16-118, which is a question of law over which appellate courts have unlimited review. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014).

8

K.S.A. 16-118 provides:

"(a) A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged credit agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor.

"(b) All credit agreements shall contain a clear, conspicuous and printed notice to the debtor that states that the written credit agreement is a final expression of the credit agreement between the creditor and debtor and such written credit agreement may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between the creditor and debtor."

In its decision, the district court found: "[N]o credible evidence has been presented to establish the existence of a written agreement signed by both parties to modify or waive any terms of performance under the promissory note and mortgage as required under the terms of K.S.A. 16-118(a) and that, as a result, the [Bartlings'] claims and defenses in this suit are barred." To put it more simply, the district court determined a credit agreement modifying the note or mortgage must be in writing, so no parol evidence can be considered in this foreclosure action.

*Document is a credit agreement*

The Bartlings contend that K.S.A. 16-118 does not apply because the legislature expressly stated that a "credit agreement" does *not* include open-end or closed-end promissory notes or real estate mortgages. The Bartlings claim this matter involves a note and a mortgage, neither of which is a credit agreement, therefore, parol evidence regarding their "loan modification" can be considered.

9

K.S.A. 16-117(a) excludes open-end or closed-end promissory notes and real estate mortgages from the definition of a "credit agreement."

> "'Credit agreement' means an agreement by a financial institution to lend or delay repayment of money, goods or things in action, to otherwise extend credit or to make any other financial accommodation. For purposes of this act the term 'credit agreement' does not include the following agreements:  Open-end or closed-end promissory notes, real estate mortgages, security agreements, guaranty agreements, letters of credit, deposit account agreements, agreements in connection with deposit accounts for the payment of overdrafts, agreements in connection with student loans insured or guaranteed pursuant to the federal higher education act of 1965 and acts amendatory thereof and supplementary thereto, and agreements in connection with 'lender credit cards' as defined in the uniform consumer credit code . . . ." K.S.A. 16-1117(a)

The crucial document was sent from Chase to the Bartlings in September of 2009. FNMA refers to this document as a "forbearance plan agreement," but the Bartlings consider the document to be a "loan modification." Either way, by its plain terms, the document is neither a promissory note nor a real estate mortgage. Therefore, those exclusions from the definition of "credit agreement" in K.S.A. 16-117 do not apply.  The document is, however, "an agreement by a financial institution to . . . delay repayment of money . . . or to make any other financial accommodation," so it meets the definition of a credit agreement. K.S.A. 16-117(a).

*Document was in writing and was signed by both parties*

We next consider the district court's determination that "no credible evidence has been presented to establish the existence of a written agreement signed by both parties. The Bartlings contend the document sent from Chase to the Bartlings in September of 2009 is such an agreement. That document, titled a "Forbearance Plan Agreement," was in writing and was signed by the Bartlings, but for the Bartlings to maintain a defense

10

based on the credit agreement, the credit agreement must be signed "by the creditor and the debtor." K.S.A. 16-118(a). The document lacks any handwritten signature on behalf of Chase but includes its stamp on the cover letter which accompanied the forbearance plan agreement. Is that sufficient?

Generally, a stamp can suffice as a signature if the person placing the mark intends for it to be so. "The law in Kansas is that a signature may be by mark, initials, typewriter, print or stamp, or any other symbol if by placing the symbol on the document the person so doing intended the symbol to be a binding signature." *Board of Johnson County Comm'rs v. Kearney*, 8 Kan. App. 2d 534, 535, 661 P.2d 823, *rev. denied* 233 Kan. 1091 (1983) (citing *Southwest Engineering Co., Inc. v. Martin Tractor Co., Inc.*, 205 Kan. 684, 690, 473 P.2d 18 [1970] [concluding, under the Uniform Commercial Code ("UCC"), that the term "signed" included any symbol executed or adopted by a party intending to authenticate a writing, and that such symbol could be printed, stamped, or written], and *Guthrie v. Anderson*, 49 Kan. 416, 420, 30 P. 459 [1892]). Comment two to K.S.A. 84-3-401, our UCC, states that "[a] signature may be handwritten, typed, printed or made in any other manner." See also *Southwest Engineering Co.*, 205 Kan. at 690 (holding, in the context of a contract for the sale of goods, that a printed name constituted a signature for purposes of the UCC).

Therefore, we find the stamped signature was as effective as a handwritten signature would have been.

But that signature appears only on the cover letter which enclosed the forbearance plan agreement and not on the agreement itself. We recognize the axiom that "where two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together to determine the intent of the parties." *Hall v. Mullen*, 234 Kan. 1031,

11

1038, 678 P.2d 169 (1984). But that axiom is inapplicable here, where only one instrument is executed by both of the parties, and the underlying agreement is not.

*The trial court was right for the wrong reason.*

But even if we were to read the credit agreement in pari materia with its cover letter and find that the credit agreement was signed by both parties, we would nonetheless find that the district court was right for the wrong reason. See *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 218, 251 P.3d 65 (2011). As the district court found, K.S.A. 16-118 states that a written credit agreement "may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between the creditor and debtor." Therefore, the parol evidence the Bartlings wish to rely upon cannot be considered to contradict the written credit agreement. K.S.A. 16-118(b).

By the plain language on the face of the document, this was a forbearance agreement. It required the Bartlings, to become current on their mortgage, to make three payments in the amount of $1,051.24, followed by a balloon payment in the amount of $7,905.76, which they admittedly did not make. The Bartlings remained bound by the terms of the note and the mortgage and were obligated to continue to make their monthly payments as agreed upon. It is uncontested that they failed to do so.

The district court correctly excluded parol evidence to show a modification or waiver of any terms of performance under the note and mortgage. Furthermore, the Bartlings failed to show a genuine issue as to a material fact as to the necessary elements of a cause of action on the note. The Bartlings signed a note secured by a mortgage; FNMA was the valid holder of the note and the mortgage; and the Bartlings defaulted on the note. See *Hansen*, 48 Kan. App. 2d at 218. Therefore, FNMA is entitled to summary judgment.

12

IV.    DID THE DISTRICT COURT ERR BY DISMISSING THE BARTLINGS'
       COUNTERCLAIMS?

The Bartlings asserted a counterclaim alleging fraud and violations of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.* The Bartlings argue Chase acted fraudulently by inducing them to miss payments and engaged in deceptive acts and practices. They contend the fraud and consumer protection violations both occurred prior to any loan modification or execution of a forbearance plan.

The district court found that K.S.A. 16-118 requires all credit agreements to be in writing, that all parol evidence was inadmissible, and that this precluded the Bartlings' fraud and KCPA counterclaims.

*Our standard of review*

The district court, by applying K.S.A. 16-118 and dismissing the counterclaims, ruled as a matter of law, rather than making findings of fact. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor*, 301 Kan. at 918.

*Our legal interpretation*

As noted above, K.S.A. 16-118 provides that a debtor "may not maintain an action for legal or equitable relief . . . based . . . upon a failure to perform on an alleged credit agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor." But the Bartlings' counterclaims assert fraud and KCPA violations and are not "based . . . upon a failure to perform on an alleged credit agreement." See K.S.A. 16-118. In fact, the acts which comprise their counterclaims were allegedly committed before the parties entered into the credit agreement. The Bartlings'

13

counterclaims allege fraud based on facts not included in the credit agreement and allege deceptive and unconscionable practices based on facts arising from events other than the credit agreement.

Nothing in K.S.A. 16-118 precludes such counterclaims or reaches these tort or statutory claims which are not based on one's nonperformance of a credit agreement. Subsection (c) of K.S.A. 16-118 provides that failure to comply with the statutory requirements for credit agreements precludes an action based on the following legal or equitable theories: "(1) An implied agreement based on course of dealing or performance or on a fiduciary relationship; (2) promissory or equitable estoppel; (3) part performance; or (4) negligent representation." By negative inference, the statute does not preclude actions based on fraud or the KCPA, which require an intent to deceive. Accordingly, the district court erred in dismissing the Bartlings' counterclaims on this basis.

*Failure to plead fraud with particularity*

FNMA also argues the Bartlings' fraud claim was not pled with particularity. However, after reviewing the record, we find this issue has been raised for the first time on appeal. In its amended answer, FNMA asserted its affirmative defenses. First, FNMA stated the "Counterclaim is barred by K.S.A. 16-118(a)." Next, FNMA stated the Bartlings failed to state a claim under the KCPA. FNMA's final affirmative defense was:

> "The Counterclaim fails to state a claim upon which relief can be granted as it relies on conclusory allegations which are contradictory and do not reasonably follow from the description of events in said claim. Under Kansas law, the Court is free to disregard conclusory allegations that are contradictory or do not reasonabl[y] follow from the description of events in the pleadings."

On appeal, FNMA claims that only one counterclaim was asserted—the consumer protection claim. FNMA acknowledges a claim of fraud was eventually added but was

14

added without leave. This argument was also not addressed below. Then, FNMA addresses notice pleading and argues "K.S.A. 60-209(b) requires a party alleging fraud to state with particularity the circumstances that constitute fraud." FNMA then provides the elements of fraud and fraud by silence and contends these elements must be pled with particularity.

We find FNMA's claim regarding the Bartlings' failure to plead with particularity to be different from its affirmative defense that the Bartlings failed to state a claim. Because this issue is raised for the first time on appeal, it is not properly before this court. See *Wolfe Electric*, *Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

Based on the foregoing, the Bartlings' counterclaims regarding KCPA violations and fraud should have been considered by the district court. We affirm the summary judgment on the foreclosure but reverse and remand the counterclaims for further proceedings.

Affirmed in part, reversed in part, and remanded.